UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DOW CORNING CORPORATION,

    Plaintiff,

v.

                 Case Number: 10-11226-BC
                 Honorable Thomas L. Ludington

RSI SILICON PRODUCTS, LLC and
RSI SILICON INC.,

    Defendants.
                     /

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DISMISSING PLAINTIFF'S COMPLAINT FOR LACK OF PERSONAL JURISDICTION

On March 26, 2010, Plaintiff Dow Corning Corporation filed a one-count complaint against Defendants RSI Silicon Products LLC and RSI Silicon Inc., alleging that Defendants misappropriated a trade secret related to the manufacture of high-grade silicon used in the production of solar energy panels. *See* Uniform Trade Secrets Act, Mich. Comp. Laws §§ 445.1901–.1910. The complaint alleged subject matter jurisdiction based on diversity of citizenship and that venue was proper in the Northern Division of the Eastern District of Michigan because a substantial portion of the events giving rise to the case occurred in Bay County. *See* 28 U.S.C. §§ 1332, 1391. On April 21, 2010, Defendants filed a motion to dismiss, contending that the Court lacks personal jurisdiction over the Defendants, Fed. R. Civ. P. 12(b)(2), and that the complaint fails to state a claim upon which relief can be granted, Fed. R. Civ. P. 12(b)(6).

Plaintiff's complaint contains the necessary factual allegations to state a claim for relief under the liberal notice pleading standard set forth in the Federal Rules of Civil Procedure. It does not, however, allege sufficient contacts between Defendants and the State of Michigan to support

the exercise of personal jurisdiction over Defendants in this state. Accordingly, Defendants motion will be **GRANTED** and Plaintiff's complaint will be dismissed without prejudice.

## BACKGROUND

Plaintiff Dow Corning Inc. was established in 1943 by The Dow Chemical Company and Corning, Inc. to manufacture silicones. In 2001, Plaintiff began developing new technology to produce the high-grade silicon used in solar energy panels. Pl. Compl. ¶ 7. Plaintiff committed substantial resources to the development of the technology, hoping to exploit the expanding market for "green" energy products. *Id.* ¶¶ 8–10. Plaintiff was careful to keep its developments secret, knowing that its proprietary information could greatly aid competitors. If the information became more widely known, it would decrease the value of Plaintiff's new technology. *Id.* ¶¶ 10–12. Plaintiff alleges that it took "reasonable measures" to protect its trade secrets, including

> limiting the disclosure of this information to a small number of employees on a "need to know" basis, requiring those employees to sign confidentiality agreements, annual training of employees regarding the need to protect trade secrets, requiring vendors to sign confidentiality agreements, and protecting files containing information relating to the trade secrets through electronic passwords, labeling, and locked hard copy files. In addition, [Plaintiff]'s facilities in which these trade secrets were developed and in which information regarding the trade secrets is kept are protected by security measures including employee identification cards, security guards, closed circuit television monitoring, and controlled access to entryways.

*Id.* ¶ 12.

Plaintiff contacted an unidentified vendor—styled "XYZ Company" in the complaint—at an unidentified time to discuss the development of its new solar-grade silicon technology. *Id.* ¶ 11. Plaintiff's communications with XYZ company were subject to a confidentiality agreement and were kept secret. *Id.* On August 7, 2009, an officer of Defendant RSI Silicon Products LLC also contacted XYZ Company to discuss development of a manufacturing process for solar-grade silicon.

*Id.* ¶ 13. Defendants also manufacture solar-grade silicon, but through a different process than Plaintiff. Defendants' process is described in U.S. Patent Application No. 11/685,899. *Id.* ¶ 15. Defendants continued to contact XYZ Company concerning the development of solar-grade silicon technology through September 2009, and disclosed in the course of those communications that they were aware that XYZ Company was working with Plaintiff on solar-grade silicon technology. *Id.* ¶ 17. Eventually, XYZ Company confirmed that it was working with another company on the development of solar-grade silicon, that its cooperation was subject to a confidentiality agreement, and that it could not assist Defendants. *Id.* ¶ 16. XYZ Company provided a list of other vendors that may be able to assist Defendants. *Id.*

> Plaintiff alleges that
>
> [t]he research and development assistance sought by Defendant RSI Silicon Products LLC from XYZ Company and from the other vendors to which it was referred by XYZ Company would be unnecessary and illogical if Defendant RSI Silicon Products LLC was utilizing the purification methodology and equipment specified in U.S. Patent Application No. 11/685,899. Such research and development assistance would, however, likely be an integral part of any effort by Defendants to replicate Dow Corning's trade secret purification methodology and equipment.

*Id.* ¶ 19. Plaintiff further alleges that no one with access to its trade secrets was authorized to share those secrets with Defendants. *Id.* ¶ 20. Plaintiff asserts that Defendants' communications with XYZ Company "evidence [their] unlawful acquisition, use and disclosure of Dow Corning's trade secret purification methodology and equipment to further Defendants' interests[,]" and that "these actions threaten the future unlawful use and disclosure of Dow Corning's trade secret purification methodology and equipment." *Id.* ¶ 21.

Defendants' April 21, 2010 motion to dismiss contends that Plaintiff's complaint should be dismissed because it "fails to allege facts sufficient to establish personal jurisdiction" and "also fails

to allege facts necessary to state a claim for relief for trade secret misappropriation—the complaint's only asserted cause of action." Defs. Mot. at 1; [Dkt. # 7]. Defendants contend that they lack the "continuous and systematic" contacts with the State of Michigan that are required to establish general personal jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16 (1984). Defendants are based in Pennsylvania and have no general business contacts with Michigan. Defendants further contend that they have not "purposefully availed" themselves to the benefits of transacting business in Michigan with respect to the specific allegations in Plaintiff's complaint, which is required to establish specific personal jurisdiction. *See Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1115–16 (6th Cir. 1994); *see also* Fed. R. Civ. P. 12(b)(2) (providing that a party may move to dismiss a complaint for lack or personal jurisdiction in lieu of filing an answer). Defendants further contend that Plaintiff has not alleged a claim for relief that is "plausible on its face." *See Hensley Mfg., Inc. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (citation omitted). That is, Plaintiff has not provided sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also* Fed. R. Civ. P. 12(b)(6) (providing that a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted in lieu of filing an answer).

**II**

Defendants contend that Plaintiff's complaint does not state a claim upon which relief can be granted. "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). The requirement is meant to provide the opposing party with " 'fair notice of what the . . . claim is and the grounds upon which it rests.' " *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting

*Conley v. Gibson*, 355 U.S. 42, 47 (1957)). If a complaint does not meet that standard, the opposing party may move to dismiss it for failure to state a claim at any time before filing an answer. Fed. R. Civ. P. 12(b)(6).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (2007) (citations omitted). "Factual allegations must be enough to raise a right to relief above a speculative level, on the assumption that all the allegations in the complaint are true . . . ." *Id.* at 555–56 (citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570)). "Facial plausibility" requires the plaintiff to include sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

**A**

Michigan law provides that misappropriation of trade secrets may be enjoined, and that a complainant may also be entitled to recover damages for the misappropriation. Mich. Comp. Laws §§ 445.1903–.1904. "Misappropriation" means either:

> (i) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means[; or]
>
> (ii) Disclosure or use of a trade secret of another without express or implied consent by a person who did 1 or more of the following:
>
> > (A) Used improper means to acquire knowledge of the trade secret.

> (B) At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was derived from or through a person who had utilized improper means to acquire it, acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, or derived from or through a person who owed a duty to the person to maintain its secrecy or limit its use.
>
> (C) Before a material change of his or her position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

Mich. Comp. Laws § 445.1902(b). "Improper means" is defined to include "theft, bribery, misrepresentation, breach, or inducement of a breach of a duty to maintain secrecy or espionage through electronic or any other means." Mich. Comp. Laws § 445.1902(a). A "trade secret" is

> information, including a formula, pattern, compilation, program, device, method, technique, or process, that is both of the following:
>
> > (i) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
> >
> > (ii) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Mich. Comp. Laws § 445.1902(d).

Defendants contend that Plaintiff's complaint should be dismissed for failure to state a claim because it merely recites the elements of a cause of action for misappropriation of trade secrets without providing "the 'who,' 'what,' 'where,' 'when,' 'how,' or 'why' " that establishes a misappropriation has occurred. Defs. Mot. at 9–10. Defendants contend that Plaintiff's complaint improperly pleads misappropriation by inference without providing any specifics as to who allegedly misappropriated the trade secret, when the trade secret was misappropriated, or how the trade secret was misappropriated.

Plaintiff's response emphasizes that "misappropriation" under Michigan law, in its simplest

form, has only two elements: (1) acquisition through (2) improper means.[1]  Plaintiff asserts that the complaint alleges acquisition in paragraphs 11, 14, and 17.  Specifically, Plaintiff asserts that without knowledge of its trade secret silicon purification method, Defendant would have had no reason to contact XYZ Company, and that Defendants admitted to knowledge of the trade secret directly to XYZ company.  Plaintiff further asserts that the complaint alleges improper means by inference.  Specifically, Plaintiff asserts that the silicon purification technology is carefully guarded, disclosed only to necessary employees and vendors, and disclosed only after obtaining a confidentiality agreement from the person receiving the disclosure.  Therefore, whoever provided the information to Defendants breached a confidentiality agreement in the process.  Plaintiff further asserts that Defendants knew the technology was highly confidential—the companies had entered into a nondisclosure agreement related to the technology.  [Dkt. # 11-A].  As a result, Plaintiff asserts that Defendants must have acquired the trade secret through improper means because they either obtained it by "theft, bribery, misrepresentation, breach, or inducement of a breach of a duty to maintain secrecy."  Mich. Comp. Laws § 445.1902(a).

**B**

Plaintiff's complaint contains sufficient factual assertions to state a claim upon which relief can be granted.  Plaintiff asserts that it possesses a trade secret silicon purification technology; that Defendants, by their own admission to XYZ Company, have acquired that trade secret; that Defendants, through their earlier contact with Plaintiff, know the technology is a trade secret; and that the trade secret must have been acquired by improper means because Plaintiff has carefully

---

[1] The acquisition must, of course, be of a "trade secret."  At this stage, Defendants have not disputed whether Plaintiff's silicon purification technology is a trade secret.

guarded the trade secret and never authorized its disclosure to Defendants. The complaint alleges sufficient facts and circumstantial evidence to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. More specific allegations concerning who, what, where, when, how, and why the misappropriation occurred are not necessary at this stage. Plaintiff is entitled to supplement the facts alleged in its complaint through discovery.

Importantly, Michigan's Uniform Trade Secrets Act provides broad protection for trade secrets, and sets a relatively low bar for pleading misappropriation. A plaintiff need not plead that the defendant "used" the trade secret or benefitted from it in any way. Where, as here, the existence of a trade secret is apparently not contested, all a plaintiff needs to demonstrate to establish misappropriation is that the defendant acquired the trade secret through improper means or with reason to know that the trade secret was acquired through improper means. Furthermore, the definition of improper means is quite broad, including both breach of a nondisclosure agreement and inducement to breach such an agreement.

Defendants contend that if the allegations in the complaint give rise to an inference that the trade secret was acquired through improper means, the allegations give rise to the equally plausible inference that Defendants developed the same silicon purification technology independently. While that may be true, it is not the proper standard at this stage of the case. The question is whether the allegations in the complaint create a reasonable inference that Defendants are liable for the misconduct alleged, not whether the allegations create a reasonable inference that Defendants are likely liable, or more likely liable than not liable.

In this case, Plaintiff's complaint properly pleads that Defendants acquired its silicon

purification technique and that the acquisition was brought about by improper means, or with reason to know the means were improper. Accordingly, it states a claim on which relief can be granted and Defendants are not entitled to relief under Rule 12(b)(6).

**III**

The Court may exercise personal jurisdiction over an out-of-state defendant only after confirming that the state long-arm statute authorizes jurisdiction over the nonresident defendant, and that the exercise of personal jurisdiction would not deny the defendant its constitutional right to due process of law. *Reynolds*, 23 F.3d at 1115; *Omni Capital Int'l v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987); *see also* Mich. Comp. Laws §§ 600.715, .735 (Michigan's long-arm statutes). Here, the parties focus on the due process requirement. *See Kriko v. Allstate Ins. Co. of Canada*, 357 N.W.2d 882, 883 (Mich. App. 1984) (noting that Michigan's long-arm statute provides the "full extent of power possible to gain personal jurisdiction over nonresident defendants as is consistent with the principles of due process"); *FFOC Co. v. Invent A.G.*, 882 F. Supp. 642, 654 (E.D. Mich. 1994) (noting Michigan's long-arm statute is "coterminous with the due process clause").

Pursuant to the Due Process Clause, a nonresident defendant may be subjected to general personal jurisdiction in Michigan, regardless of whether the cause of action is related to the defendant's in-state activities, if that defendant's contacts with the state are "continuous and systematic." *Helicopteros Nacionales de Colombia*, 466 U.S. at 414–15. Plaintiff does not allege that Defendants activities in Michigan are continuous and systematic, rather, Plaintiff alleges that the cause of action "arises out of" specific contacts with the state, giving rise to specific personal jurisdiction over this claim. *Id.* Where a plaintiff seeks to establish personal jurisdiction through specific contacts related to the litigation, a court must find a basis to exercise jurisdiction over the

defendant with respect to each individual claim. *Preferred RX, Inc. v. Am. Prescription Plan, Inc.*, 46 F.3d 535, 550–51 (6th Cir.1995). At this stage, Plaintiff has the burden of setting forth a prima facie case for jurisdiction to avoid dismissal. *See Ford Motor Co. v. Great Domains, Inc.*, 141 F. Supp. 2d 763, 770 (E.D. Mich. 2001) (citing *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 149 (6th Cir. 1997)).

The Sixth Circuit employs a three-part test to determine whether specific jurisdiction exists over a nonresident defendant:

> First, the defendant must purposefully avail himself of the privilege of conducting activities within the forum state; second, the cause of action must arise from the defendant's activities there; and third, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make its exercise of jurisdiction over the defendant fundamentally fair.

*Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir.1998) (citations omitted); *see also S. Mach. Co. v. Mohasco Indus. Inc.*, 401 F.2d 374, 381 (6th Cir. 1968) (establishing the three-part test).

**A**

The first step, purposeful availment, requires that the defendant's contacts with the forum state "proximately result from actions by the defendant *himself* that create a substantial connection with the forum State." *Reynolds*, 23 F.3d at 1116 (quoting *Burger King Co. v. Rudzewicz*, 471 U.S. 462, 475 (1985)) (quotation marks omitted). "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.' " *Rudzewicz*, 471 U.S. at 475 (citations omitted). "[T]he defendant's conduct and connection with the forum state [must be] such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Purposeful availment may be established through the "effects test" described by the Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984). *See Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 552 (6th Cir. 2007). In *Calder*, the Supreme Court held that two Florida-based journalists who "intentional[ly]" and "expressly aimed" a libelous magazine article at a California resident could be haled into court in California. *Id.* at 789. The Court emphasized that although the journalists conducted their research and wrote the article in Florida, the "article was drawn from California sources, and the brunt of the harm, in terms both of respondent's emotional distress and the injury to her professional reputation, was suffered in California." *Id.* at 788–89. The reporter and editor had frequent telephone contact with sources in California, and they knew that the plaintiff, an actor, lived and worked in California. *Id.*

Still, the Sixth Circuit has repeatedly emphasized that *Calder* must be interpreted narrowly. "[T]he mere allegation of intentional tortious conduct which has injured a forum resident does not, by itself, always satisfy the purposeful availment prong." *Air Prods. & Controls, Inc.*, 503 F.3d at 552–53. Such an allegation will only "enhance" the defendant's contacts with the forum state. *Id.*; *see also Scotts Co. v. Aventis S.A.*, 145 F. App'x 109, 113 n.1 (6th Cir. 2005) ("[W]e have applied *Calder* narrowly by evaluating whether a defendant's contacts with the forum may be enhanced if the defendant expressly aimed its tortious conduct at the forum and plaintiff's forum state was the focus of the activities of the defendant out of which the suit arises."); *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1079 (10th Cir. 1995) ("Our review of these post-*Calder* decisions indicates that the mere allegation that an out-of-state defendant has tortiously interfered with contractual right or has committed other business torts that have allegedly injured a forum resident does not necessarily establish that the defendant possesses the constitutionally required minimum contacts.").

Out-of-state activity that causes economic harm to a forum state resident, is not, by itself, enough to support personal jurisdiction over the out-of-state actor in the forum state. *See Air Prods. & Controls, Inc.*, 503 F.3d at 553. In a 2001 opinion, Judge Cleland summarized the *Calder* effects test as follows: a plaintiff "must demonstrate (1) that the brunt of the injury was felt in Michigan, (2) that the [wrongful conduct] was intentional or deliberate, and (3) that the . . . acts were expressly aimed at the State of Michigan." *Ford Motor Co.*, 141 F. Supp. 2d at 774.

Plaintiff contends that although Defendants' direct contacts with Michigan are limited, purposeful availment can be established through the effects test. Plaintiff and Defendants agree that Dow Corning is a Michigan company, and that its principal place of business is located in Michigan. The parties dispute, however, whether the alleged misconduct was intentional and expressly aimed at Michigan.

Plaintiff's complaint alleges that Defendants acquired trade secrets, but it does not allege where or how the acquisition occurred. Plaintiff nevertheless contends that the acquisition was intentional and targeted at Michigan because it was made "with at least knowledge or reason to know that the trade secrets were acquired by improper means." Pl. Resp. at 7. Defendants contacted XYZ Company regarding solar-grade silicon, and admitted to XYZ that they were aware of the vendor's relationship with Plaintiff. Moreover, Defendants knew Plaintiff's purification process was secret because XYZ Company informed Defendants that its relationship with Plaintiff was subject to a confidentiality agreement. Notably, Plaintiff and Defendants had also entered into a "Bilateral Non-Disclosure Agreement" in August 2009. The agreement was adopted after Defendants contacted Plaintiff to inquire into cooperative technology development. [Dkt. # 11-A].

Plaintiff contends that the non-disclosure agreement as well as a series of e-mails between

Defendants' President/CEO, Ed Boardwine, and former Plaintiff employee, Sefa Yilmaz, demonstrate purposeful availment when "enhanced" by the effects of the wrongful conduct that Defendants directly targeted at Michigan. The e-mail chain began in September 2009 when Yilmaz, apparently writing from Michigan, contacted Boardwine in Alabama to inquire into an employment position with RSI. Boardwine indicated in response that he would review Yilmaz's resume, and inquired into non-compete and non-disclosure agreements with Plaintiff. Yilmaz responded that there were none, and reiterated his interest in employment.

The limited contacts between Defendants and Michigan coupled with speculative evidence related to their intentions is insufficient to establish purposeful availment to the jurisdiction of this State. Plaintiff does not allege that Defendants stole trade secrets from a Michigan facility or traveled to Michigan to negotiate the purchase of trade secrets, but only that Defendants possess trade secrets that were developed in Michigan. Plaintiff does not specify how Defendants obtained those trade secrets or from whom. They merely contend that the acquisition must have been improper because the secrets were closely guarded.

Moreover, the e-mail contacts with Yilmaz appear to have been initiated from Michigan. There is no evidence that Defendants attempted to recruit Plaintiff's employees or lure them away in order to acquire additional knowledge of Plaintiff's operations. An e-mailed employment inquiry initiated in Michigan is an inadequate predicate to justify subjecting an out-of-state company to personal jurisdiction in Michigan, particularly where there is no evidence or allegation that the e-mail inquiry was related to the alleged misappropriation.

Defendants only other contact with Michigan—the non-disclosure agreement with Plaintiff—is limited and only indirectly related to this case. There is no evidence that a

representative of either defendant ever traveled to Michigan to inspect a Dow Corning facility or to discuss the potential for collaborative technology development. Additionally, the non-disclosure agreement does not contain a choice of law provision or an agreement to adjudicate disputes in Michigan. Indeed, there is no evidence that any information was ever exchanged pursuant to the agreement. There is certainly no evidence that Defendants' alleged acquisition of the trade secret was related to the nondisclosure agreement.

Importantly, this is not a case where Defendants' conduct can be described as intentionally and expressly targeted at a Michigan company. The evidence is sufficient to raise a plausible inference that Defendants possessed a trade secret that belongs to a Michigan company. There is no support, however, for Plaintiff's assertion that the Court should "infer" additional, targeted contacts with Michigan based on Defendants apparent knowledge of Plaintiff's trade secret. Pl. Resp. at 9.

As discussed above, the Michigan statute that prohibits the misappropriation of trade secrets has a very limited intent requirement. Therefore, Plaintiff's complaint states a claim for relief under Rule 12(b)(6) simply by alleging facts which support an inference that Defendants have possession of the trade secret, and that Defendants know what they have is a trade secret. That is not, however, enough to establish the Defendants intentionally targeted their alleged tortious conduct at Michigan, as the Due Process Clause requires to support the exercise of personal jurisdiction over Defendants in the State of Michigan.

In their reply, Defendants emphasize that the Sixth Circuit has affirmed a district court's dismissal for lack of personal jurisdiction in circumstances where the defendant's contacts with the forum state were substantially greater than the contacts in this case. In *Calphalon Corp. v. Rowlette*,

an Ohio corporation sued a Minnesota company in Ohio for a declaratory judgment related to a sales representative agreement that had been in place for nearly twenty years. 228 F.3d 718, 720–21 (6th Cir. 2000). While the agreements were in effect, the Minnesota company, Rowlette, corresponded with the Ohio Corporation, Calphalon, via telephone, fax, and mail, and made two physical visits to Ohio in 1996 for a mandatory sales meeting and a factory tour. *Id.* The agreement also had a choice of law provision indicating it would be governed by Ohio law. *Id.* At the end of 1997, Calphalon indicated to Rowlette in a letter that the sales agreement would not be renewed, and Rowlette responded on May 2, 1998 that it intended to assert claims for breach of contract and unpaid commissions. *Id.* Calphalon filed suit on May 28, 1998 in the United State District Court for the Northern District of Ohio seeking a declaratory judgment that Ohio law controlled the agreement, the termination of the agreement was lawful, and that Calphalon did not owe additional commissions to Rowlette. *Id.* The district court dismissed the suit, concluding that even if Rowlette was subject to jurisdiction under Ohio's long-arm statute, exercising jurisdiction over the company in these circumstances would offend due process. *Id.*

The Sixth Circuit affirmed, noting that the contract, standing alone, was insufficient to confer personal jurisdiction even with the additional telephone, fax, and mail contacts, the personal visits to Ohio, and the letter directed to Ohio threatening litigation. *Id.* at 722. Commenting that the "quality" of the contacts matters more than the "quantity" of the contacts, the Sixth Circuit opined "we find that the actual course of dealings between the parties demonstrates that Rowlette's contacts with Ohio were purely 'fortuitous' and 'attenuated.' " *Id.* (citing *Kerry Steel Inc.*, 106 F.3d at 151). The Court emphasized that a negative economic effect on an in-state plaintiff is not enough to support the exercise of personal jurisdiction over an out-of-state defendant. *Id.* at 722–23.

In sum, Defendants contacts with Michigan are extremely limited, and more importantly, they arise out of Plaintiff's business residence in Michigan rather than any targeted or intentional activity of Defendants directed at Michigan. Speculative assertions that Defendants "must have" contacts with Michigan given their alleged knowledge of Plaintiff's trade secrets are not enough to find purposeful availment to this state's laws or economic markets.

**B**

The second step requires that each asserted cause of action "arise from" the defendant's contacts with the forum state. A cause of action clearly "arises from" the defendant's purposeful contact with the forum state if the cause of action would not exist but for the contacts cited. *See Theunissen v. Matthews*, 935 F.2d 1454, 1461 (6th Cir.1991); *Payne v. Motorists' Mutual Ins. Cos.*, 4 F.3d 452, 456 (6th Cir.1993). Although this does not require that a plaintiff's claims arise "formally and directly" from the defendant's contacts with Michigan, the claims must still "have a substantial connection with the defendant's in-state activities." *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1275 (6th Cir.1998). "[W]hen the operative facts of the controversy are not related to the defendant's contact with the state," the cause of action does not arise from that contact. *Id.*

The misappropriation cause of action does not "arise from" the Defendants' contacts with Michigan. It does not arise from the non-disclosure agreement or the Yilmaz e-mails because the complaint would still state a claim for relief if those contacts did not exist. *See Theunissen*, 935 F.2d at 1461. The result may be different if, for example, Plaintiff had sued for breach of the non-disclosure agreement or alleged specifically that Defendants acquired the trade secrets through Yilmaz. However, Plaintiff does not contend that Defendants breached the non-disclosure agreement or obtained any protected information from Yilmaz. Rather, Plaintiff merely speculates

-16-

that Defendants must have obtained protected information from somewhere, or they would never have contacted XYZ Company.

<h1 style="text-align:center">C</h1>

If the cause of action arises from the defendant's purposeful contacts with the forum state, the third step requires that the exercise of personal jurisdiction over the defendant in this instance be reasonable. "This requirement exists because minimum requirements inherent in the concept of fair play and substantial justice may defeat the reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities." *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 554 (6th Cir. 2007) (citations and quotations omitted). Where the first two requirements are met, reasonableness is inferred such that "only the unusual case will not meet this third criterion." *Theunissen v. Matthews*, 935 F.2d 1454, 1461 (6th Cir. 1991) (quoting *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1170 (6th Cir. 1988)). Relevant factors as to whether the exercise of jurisdiction is reasonable include "(1) the burden on the defendant; (2) the interest of the forum state; (3) the Plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the controversy." *Intera Corp. v. Henderson*, 428 F.3d 605, 618 (6th Cir. 2005) (citing *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1268 (6th Cir. 1996)).

Here, Defendants contacts with Michigan are simply insufficient to satisfy the fundamental and longstanding test established by the U.S. Supreme Court: "maintenance of the suit" in this Court would "offend 'traditional notions of fair play and substantial justice' " guaranteed by the Due Process Clause. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The interests of this state in the controversy and Plaintiff's interest in obtaining relief are insufficient to force the Defendants to travel here and provide a defense against

the speculative allegations in Plaintiff's complaint.

## IV

Plaintiff's complaint states a claim for relief, Fed. R. Civ. P. 12(b)(6), but it does not allege sufficient facts to establish personal jurisdiction over the Defendants in Michigan, Fed. R. Civ. P. 12(b)(2).

Accordingly, it is **ORDERED** that Defendants' motion to dismiss [Dkt. # 7] is **GRANTED**.

It is further **ORDERED** that Plaintiff's complaint is **DISMISSED WITHOUT PREJUDICE**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: November 15, 2010

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 15, 2010.

s/Tracy A. Jacobs
TRACY A. JACOBS